1
2
3
4
5
6        **IN THE UNITED STATES DISTRICT COURT FOR THE**
7              **EASTERN DISTRICT OF CALIFORNIA**
8
9    **FRANK MENDES,**                    )      **CIV F 07-1265  AWI GSA**
                                          )
10              **Plaintiff,**            )      **ORDER ON DEFENDANT'S**
                                          )      **MOTION TO DISMISS**
11        **v.**                          )
                                          )
12   **W.M. LYLES CO., a California**     )
     **corporation, and DOES 1 through 100,**  )
13   **inclusive,**                       )
                                          )
14              **Defendant.**            )
                                          )
15   _____     )
16   _____
17
18        This is a wage dispute between Plaintiff Frank Mendes ("Mendes") and his former

19   employer, Defendant W.M. Lyles Co. ("Lyles").  Mendes filed a complaint in the Tulare County

20   Superior Court.  Lyles removed to this Court on the basis of a federal question and filed a motion

21   to dismiss.  In response, Mendes filed a First Amended Complaint ("FAC") alleging four state

22   law claims and a breach of a collective bargaining agreement through the Labor and Management

23   Relations Act ("LMRA").  Lyles now moves to dismiss the FAC under Rule 12(b)(6).  For the

24   reasons that follow, Lyles's motion will be granted in part and denied in part.

25

26                            **BACKGROUND**

27        From the FAC, Mendes was employed by Lyles from September 1988 to December 19,

28   2006.  At all pertinent times, Mendes was a member in good standing of the Operating

     Engineer's Union and employed by Lyles under the terms of the Operating Engineers' Union

Collective Bargaining Agreement ("the OEU").[1]  Mendes was at all times duly qualified and performed his duties in a satisfactory manner.

On December 28, 2006, dispatchers Jesse Casarez and George Tomine approached Mendes to inquire about Mendes's pay structure.  Mendes indicated to Casarez and Tomine that he was paid from the time he left the yard to go to the jobsite.  Casarez told Mendes that Mendes would no longer be paid from the time he left the yard.  Instead Mendes would be paid from the time he arrived at the jobsite in Lyle's vehicle, which Mendes would drive from the yard.  Mendes told Casarez that this was not right and that his pay by law and by the OEU had to begin when he left the yard to proceed to the jobsite in Lyles's vehicle.  Mendes also reported the allegedly illegal conduct of failing to pay for travel from the yard to the jobsite to Casarez.

On December 29, 2006, one day after reporting the allegedly illegal conduct to Casarez, Lyles suddenly and without notice terminated Mendes stating that his services were no longer required because it was slow and his position was no longer needed.  On information and belief, approximately two days later, Lyles hired another person to do the exact same job as Mendes, but the new hire was not paid to drive Lyles's vehicle from the yard to the jobsite.

From the pay period of March 23, 2000, through the pay period ending September 29, 2005, Lyles paid Mendes what it referred to as a "utility rate."  Lyles told Mendes that it had an agreement with the Operating Engineers Union whereby Lyles could pay this "utility rate" to Mendes.  On October 6, 2005, Lyles suddenly and without notice raised Mendes's pay by approximately $9.97 per hour.  This was the first time that Mendes began to suspect that Lyles had underpaid him illegally and in violation of the OEU.

Lyles knew of its contractual and statutory duties to pay Mendes wages according to the OEU and California law.  However, Lyles intentionally and improperly failed to pay the wages due and owing to Mendes.  Lyles knowingly and intentionally established and carried out a policy that was in violation of California Labor Code §§ 201, 222, and 227 in that Mendes was

---

[1]There were several collective bargaining agreements in force during Mendes's employment:  (1) an OEU effective from 2002 through 2006; (2) an OEU effective from 2006 through 2010; (3) a Public Utility Agreement effective through 2005; and (4) a Public Utility Agreement effective from July 1, 2006 through June 30, 2010.

1     not paid the wage agreed upon in the OEU, thereby depriving Mendes of wages and further

2     payments into Mendes's retirement fund.  Lyles failed to pay the agreed wage by paying

3     approximately $9.97 less per hour to Mendes.

4            On or about late January 2007, Mendes told his union representative about the unlawful

5     conduct of Lyles, to which the representative responded that Mendes was required to file a

6     grievance within 20 days of termination.  However, Mendes did not find out that he had been

7     replaced until late January 2007.  Mendes had believed that work was slow.  When Mendes

8     discovered that he had been replaced, he immediately contacted the representative, who then told

9     Mendes that it was too late to file a grievance.

10           Mendes filed this lawsuit and filed the FAC in September 2007.  The FAC alleges: (1)

11     wrongful termination in violation of public policy based on the public policy expressed by

12     California Labor Code § 222; (2) Non-payment of wages in violation of California Labor Code

13     §§ 201, 222, and 227; (3) waiting time penalties under California Labor Code § 203; (4) breach

14     of the OEU; and (5) breach of the implied covenant of good faith and fair dealing.  Lyles moves

15     to dismiss all state law claims on the grounds that the claims are preempted by the LMRA.

16

17                    **Rule 12(b)(6) Framework**

18           Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

19     plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

20     This rule provides for dismissal of a claim if, as a matter of law, "it is clear that no relief could be

21     granted under any set of facts that could be proved consistent with the allegations."  Neitzke v.

22     Williams, 490 U.S. 319, 327 (1989); Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480,

23     1484 (9th Cir. 1995); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  In reviewing

24     a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in

25     the light most favorable to the non-moving party.  Newman v. Sathyavaglswaran, 287 F.3d 786,

26     788 (9th Cir. 2002); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court must

27     also assume that general allegations embrace the necessary, specific facts to support the claim.

28     Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano

Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994).  But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Warren, 328 F.3d at 1139; Western Mining Council, 643 F.2d at 624.  Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged."  Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review documents upon which a plaintiff's claim relies and about which there are no objections to authenticity.  Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).  If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**DEFENDANT'S MOTION**

*Defendant's Argument*

Lyles argues that all of the state law causes of action are preempted by the § 301 of the LMRA because they all require the interpretation of the applicable collective bargaining

agreement.  The preemptive power of the LMRA reaches even state tort law causes of action if the duty violated is created by the bargaining agreement and would not exist independent of the bargaining agreement.  The first cause of action does not allege that Mendes was paid improperly as a result of the alleged December 28 conversation.  Resolution of the claim would required the interpretation of seven provisions of the current Private Utility Agreement (hereinafter "PUA") (Teixeira Declaration Exhibit E) and eight provisions of the 2006-2010 OEU (Teixeira Declaration Exhibit D).

With respect to the second cause of action, that claim is based on compensation that was allegedly due under the OEU.  Resolution of that claim would require interpretation of a prior PUA, numerous provisions of the current PUA, and five provisions of the 2002-2006 OEU (Teixeira Declaration Exhibit C).

With respect to the third cause of action, that claim is based on the alleged failure to pay wages that should have been paid under the collective bargaining agreements.  The same questions and sections of the agreements that will require interpretation in order to resolve the first and second causes of action will also require interpretation to resolve the third cause of action.  The same is also true of the fifth cause of action.

Each of the causes of action will require the Court to determine which bargaining agreement applies.  The causes of action will also require a determination of the type of work performed, Mendes's classification within the agreements, whether the special private utility rate applied, whether a travel pay agreement applies, and whether Lyles violated any of the contractual agreements.

Also, the second, third, and fifth causes of action are barred because Mendes did not follow the grievance provisions of the OEU.  There were two bargaining agreements in place during the relevant time periods and each had dispute resolution procedures.  However, Mendes never filed a grievance regarding the "utility rate" from March 2000 through September 2005.  Even though he became suspicious of the rate in October 2005, he did nothing.  Since he did not exhaust the contractual grievance procedures, dismissal of these causes of action is necessary.

*Plaintiff's Opposition*

Mendes concedes that the Fifth Cause of Action for breach of the covenant of good faith and fair dealing is preempted.  However, Mendes argues that the First, Second, and Third causes of action are not preempted because they are all independent state rights that require at most mere reference to the collective bargaining agreement.  However, in the event that the Court disagrees, leave to amend should granted.

The First Cause of Action is for wrongful termination.  The FAC alleges that he was terminated in retaliation for insisting that he be payed his agreed upon wages.  No collective bargaining agreement need be interpreted or construed because the factual determination involves Lyle's motivation in the termination.

The Second Cause of Action is non-payment of wages under California law.  The right to be paid the wages owed to him is a state law right that is independent of the collective bargaining agreement.  Also, no interpretation of the collective bargaining agreement is needed because all that is necessary to resolve this claim is reference to the OEU to determine the correct wage rate.

The Third Cause of Action is for waiting time penalties under California Labor Code § 203.  Again, waiting time penalties is a right that exists apart from the collective bargaining agreement and the collective bargaining agreement would only have to be referenced in order to determine the penalty.

With respect to exhaustion of grievance procedures, there is no exhaustion requirement where rights independent of the collective bargaining agreement are sued upon.  Since the second and third causes of action are independent, no exhaustion was necessary.  Further, even if an exhaustion requirement applied, the collective bargaining agreement provides that these particular claims are not subject to arbitration.  Also, Mendes attempted to file a grievance with the Union but was told that it was too late.

*Legal Standards*

Under § 301 of the LMRA, "Suits for violation of contracts between an employer and a

labor organization representing employees in an industry affecting commerce . . . or between any

such labor organizations, may be brought in any district court of the United States having

jurisdiction of the parties . . . ."  29 U.S.C. § 185(a); Burnside v. Kiewit Pac. Corp., 491 F.3d

1053, 1059 (9th Cir. 2007).  "Although the text of § 301 contains only a jurisdictional grant, the

Supreme Court has interpreted it to compel the complete preemption of state law claims brought

to enforce collective bargaining agreements . . . [as well as] cases the resolution of which 'is

substantially dependent upon analysis of the terms of [a collective bargaining agreement].'"

Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005) (citing Allis-Chalmers Corp. v.

Lueck, 471 U.S. 202, 220 (1985); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560

(1968)).  "The Supreme Court has held in a variety of contexts that § 301 acts to preempt state

law claims that substantially depend on the CBA, that are premised on negotiable or waivable

state law duties the content of which has been covered by the CBA, or that seek to enforce the

terms of the CBA, for example, breach of contract claims."  Humble v. Boeing Co., 305 F.3d

1004, 1007 (9th Cir. 2002); see also Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1522-23 (9th Cir.

1995).  Accordingly, a state law claim will be preempted by § 301:  (1) "on the basis of the

subject matter of the law in question, as where the claims [are] founded directly on rights created

by collective-bargaining agreements;" and (2) "where the right is created by state law and not by

the collective-bargaining agreement, a claim based upon that right is preempted if [the

application of state law] requires the interpretation of a collective-bargaining agreement."

Gulden v. Crown Zellerbach Corp., 890 F.2d 195, 198 (9th Cir. 1989).  In other words, "state law

causes of action are preempted if they are either based upon the collective bargaining agreement

or dependent upon an interpretation of the agreement."  Ramirez v. Fox Broadcasting, Inc., 998

F.2d 743, 748 (9th Cir. 1992); see Burnside, 491 F.3d at 1059-60 (noting a claim is preempted

based on its "legal character" or substantial dependence on an analysis of an agreement).

　　　　"Despite the breadth of § 301 preemption, not every claim which requires a court to refer

to the language of a labor-management agreement is necessarily preempted."  Balcorta v.

Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000).  "A claim brought in

state court on the basis of a state-law right that is 'independent of rights under the collective-

bargaining agreement,' will not be preempted, even if 'a grievance arising from 'precisely the same set of facts' could be pursued. . . . [W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Valles, 410 F.3d at 1076. "[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly - it means something more than 'consider,' 'refer to,' or 'apply.'" Balcorta, 208 F.3d at 1108. "[T]he need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim." Valles, 410 F.3d at 1076. Further, as the Supreme Court has explained:

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not be thereby preempted.

Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 413 n.12 (1988); Gulden, 890 F.2d at 199 n.5. Accordingly, LMRA § 301 "should be applied only to state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, and to tort suits which allege breaches of duties assumed in collective bargaining agreements." Associated Builders & Contrs. v. Local 302 IBEW, 109 F.3d 1353, 1357 (9th Cir. 1997).

    *Discussion*[2]

**1.      First Cause of Action – Wrongful Discharge In Violation Of Public Policy**

"For a policy to support a wrongful discharge claim, [the policy] must be:  (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." Stevenson v. Superior Court, 16 Cal.4th 880, 894 (1997).  Where discrimination is not alleged, a claim for

---

[2]All references to the "Labor Code" are to the California Labor Code.

wrongful discharge in violation of public policy requires a plaintiff to prove that:  (1) he was employed by the defendant; (2) he was discharged; (3) his conduct was in furtherance of public policy[3] and was a motivating reason for his discharge; and (4) the discharge caused the plaintiff harm.  See Haney v. Aramark Uniform Services, Inc., 121 Cal.App.4th 623, 641 (2004); Judicial Council of California, Civil Jury Instructions ("CACI") § 2430 (Fall 2007 Ed.).  "[A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity."  Green v. Ralee Engineering Co., 19 Cal.4th 66, 87 (1998).

The Ninth Circuit has indicated that, "wrongful discharge claims based on public policy violations are not preempted by federal labor laws because such claims are derived from sources outside the [collective bargaining agreement]."  Sardikis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999); see also Paige v. Henry J. Kaiser Co., 826 F.2d 857, 862 (9th Cir. 1987).  Thus, the identification of an appropriate state public policy is paramount.  See Cook v. Lindsay Olive Growers, 911 F.2d 233, 237-38 (9th Cir. 1990); Whittier v. Kaiser Found. Hosps., 2007 U.S. Dist. LEXIS 17129, *10 (E.D. Cal. 2007) ("In contrast, where there is no underlying independent state public policy being asserted, the claim is then, in essence, a claim for wrongful termination contrary to the CBA.").  Here, the public policy identified in Mendes's complaint is that found in Labor Code § 222.  That code section reads: "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either wilfully or unlawfully or with the intent to defraud an employee . . ., to withhold from said employee any part of the wage agreed upon."  Cal. Lab. Code § 222.  Embodied within Section 200 et seq. of the California Labor Code is "a fundamental and substantial public policy protecting an employee's wages."  Phillips v. Gemini Moving Specialists, 63 Cal.App.4th 563, 574 (1998); see Jersey v. John Muir Medical Center, 97

---

[3]Such conduct generally falls into four categories: "(1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance."  Stevenson, 16 Cal.4th at 889.  The example given in CACI § 2430 for the third element of the cause of action is "plaintiff's refusal to engage in price fixing."  CACI § 2430.  This Court's use of the phrase "conduct in furtherance of a public policy" is meant to capture the categories of Stevenson and CACI's "price fixing" example.  As applied to this case, CACI § 2430 may be read to require Mendes to show that: (1) he was employed by Lyles; (2) Lyles discharged him; (3) Mendes's complaining/reporting about the threatened failure to pay him for "drive time" was a motivating reason for his discharge; and (4) the discharge caused him harm.

Cal.App.4th 814, 824 (2002).  Labor Code § 222 is a substantial and fundamental state public

policy.  See Jersey, 97 Cal.App.4th at 824; Phillips, 63 Cal.App.4th at 572-74.  A valid wrongful

discharge against public policy claim may be stated where an employee alleges that he was fired

because he asserted/exercised his right to receive the wages to which he is entitled.  See Jersey,

97 Cal.App.4th at 824; Phillips, 63 Cal.App.4th at 574.

Lyles argues that in order to resolve this claim, provisions of the various collective

bargaining agreements must be interpreted in order to determine such things as whether it had

been paying Mendes the incorrect wage, what work Mendes was performing, which agreement

controls, what is "just cause," etc.  See Lyles Motion at pp. 3-5.  The Court cannot agree.

Mendes is contending that he was fired because he reported that he was about to be

denied payment for driving to a job site, which he believed was contrary to the OEU.  See FAC at

¶¶ 25-31.  "Mendes told [his supervisor] that his pay, by law and by the [OEU], had to begin

when he left the yard to proceed to the jobsite . . ."  Id. at ¶ 27.  "Mendes reported the illegal

conduct of failing to pay for travel . . . to [his supervisor]."  Id. ¶ 28.  Mendes was allegedly

terminated "for engaging in protected activity, which was the statutory right to receive the wage

agreed upon under [§ 222]."  Id. at ¶ 30.  The day following his complaint/reporting, he was

terminated.  See id. at ¶ 32.

What Mendes is complaining about is a form of retaliation because he was fired after he

reported or complained about conduct that he believed violated § 222.  His act of reporting or

complaining is what Mendes alleges caused his termination.  It is Lyles's motivation that will

determine if California public policy was violated; it is not whether the OEU or PUA were

actually violated.  See Lingle, 486 U.S. at 407; Haney, 121 Cal.App.4th at 641; CACI § 2430.

Mendes does not need to show that he was actually entitled to be paid for his driving time to a

job site under the applicable collective bargaining agreement or that Labor Code § 222 was

actually being violated.  See Green, 19 Cal. at 87.  Nor does he need to show which agreement

controls, what work he was actually doing, or what constitutes "just cause" under the collective

bargaining agreements.  See Lingle, 486 U.S. at 413.  The "issue . . . is not whether [Mendes']

termination violated the collective bargaining agreement, but whether it violated California

10

public policy." Letch v. Safeway Stores, Inc., 2005 U.S. Dist. LEXIS 34304, *12 (N.D. Cal. 2005).  If a motivating reason in Lyles's decision to terminate Mendes was Mendes's reporting what he reasonably believed was unlawful activity, i.e. reporting that his supervisor was or would be violating § 222 by not paying for "drive time," then the discharge violated California public policy.  See Lingle, 486 U.S. at 407; Green, 19 Cal.4th at 87; Haney, 121 Cal.App.4th at 641; Jersey, 97 Cal.App.4th at 824; Phillips, 63 Cal.App.4th at 572-74; CACI § 2430.  "[P]urely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective bargaining agreement." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261 (1994); Lingle, 486 U.S. at 407.  Since at this point it is Lyles's motivation that is at issue, this is a "typical" wrongful/retaliatory discharge case in which interpretation of the collective bargaining agreement is unnecessary.  See Lingle, 486 U.S. at 413. This claim will not be dismissed as preempted.  See Lingle, 486 U.S. at 407-10; Sardikis, 166 F.3d at 1278; Letch, 2005 U.S. Dist. LEXIS 34304 at *11-*16; Green, 19 Cal.4th at 87; Haney, 121 Cal.App.4th at 641; Jersey, 97 Cal.App.4th at 824; Phillips, 63 Cal.App.4th at 572-74; CACI § 2430.

### 2.    Second Cause of Action – Non-Payment of Wages Per Labor Code §§ 201, 222, & 227

Mendes alleges that, from March 23, 2000 to September 29, 2005, Lyles paid him an incorrect wage, referred to as the "utility rate."  FAC ¶ 44.  Without notice, beginning on the pay period ending October 6, 2005, Lyles increased Mendes's pay by $9.97 per hour.  Id. at ¶ 45. During the 2000 to 2005 period, Mendes's benefits were based on a rate that was lower by $9.97 per hour.  Id. at ¶ 46.  Mendes contends that this conduct violated three Labor Code provisions, §§ 201, 222,[4] 227,[5] and that he is owed the difference between old utility rate and the $9.97.

---

[4]Labor Code § 222 reads, "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee . . . to withhold from said employee any part of the wage agreed upon."

[5]California Labor Code § 227 reads in full:
Whenever an employer has agreed with any employee to make payments to a health or welfare fund, pension fund or vacation plan, or other such plan for the benefit of the employees, or a negotiated industrial promotion fund, or has

FAC at ¶¶ 48-49.  In his opposition, the only Labor Code section cited is § 203, and Mendes makes similar arguments to those made in regard to the first cause of action:  the rights in Labor Code §§ 201, 222, and 227, are independent state rights and that no interpretation of the collective bargaining agreements is necessary.  The Court cannot agree.[6]

Mendes's contention is that he was not paid the amount mandated by the operative OEU and the damages claimed is the difference between the amount that was agreed upon in the OEU and the lesser amount that he was actually paid.  This claim is about a violation of a collective bargaining agreement.  Mendes relies on Labor Code §§ 222 and 227, but those sections are wholly dependant upon what an employer and employee/union "agreed upon" and prohibit withholding or not paying the amount that was "agreed upon."  See Cal. Lab. Code §§ 222, 227.  Indeed, these sections specifically codify and make "unlawful" a particular type of breach of a collective bargaining agreement:  one involving the payments of wages and benefits.[7]  Without a breach of the wage/benefit funds provisions of a collective bargaining agreement, there can be no violation of Labor Code §§ 222 or 227.

The inquiry into this cause of action, under Labor Code §§ 222 and 227, would "begin and end" with the collective bargaining agreements.  Cf. Ramirez, 998 F.2d at 748-49.  Mendes would be required to show what was "agreed upon," that he fits within the parameters of what was "agreed upon," and that Lyles did not pay him the amount that was "agreed upon."  In other

---

entered into a collective bargaining agreement providing for such payments, it shall be unlawful for such an employer willfully or with intent to defraud to fail to make the payments required by the terms of any such agreement. A violation of any provision of this section where the amount the employer failed to pay into the fund or funds exceeds five hundred dollars ($500) shall be punishable by imprisonment in the state prison for a period of not more than five years or in the county jail for a period of not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both such imprisonment and fine. All other violations shall be punishable as a misdemeanor.

[6]Labor Code § 203 provides penalties for the willful violation of Labor Code § 201.  Mendes is requesting Labor Code § 203 penalties based on the precise conduct that is alleged to have violated § 201 under the Second Cause of Action.  Since Mendes is alleging a willful violation of § 201, the Court will analyze his § 201 and § 203 claims together in the Third Cause of Action.

[7]Labor Code § 227 does not relate exclusively to collective bargaining agreements, unlike Labor Code § 222.  Nevertheless, since a collective bargaining agreement is at issue in this case, and the collective bargaining agreement includes payment by Lyles' into pension funds for union members, see Teixeira Exhibit C, the Court will refer to Labor Code § 227 only in terms of a collective bargaining agreement.

words, Mendes must show that the provisions of the collective bargaining agreements were breached/violated.  Cf. Cornn v. UPS, 2004 U.S. Dist. LEXIS 20578, *3-*5 (N.D. Cal. 2004) (holding that a claim based on a failure to pay wages in violation of Labor Code §§ 222, 223 was preempted by the LMRA because the collective bargaining agreement would have to be interpreted).  Where a state law "in essence create[s] a claim for breach of the collective bargaining agreement . . . the law [falls] squarely within the scope of [LMRA] § 301 complete preemption."  Balcorta, 208 F.3d at 1109 n.11 (distinguishing a Third Circuit case); Lueck, 471 U.S. at 210.  "State law causes of action for violation of a collective bargaining agreement – essentially breach of contract claims – are entirely displaced by section 301."  Parham v. Carrier Corp., 9 F.3d 383, 390 (5th Cir. 1993); see also Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971, 60 F.3d 1375, 1380 n.2 (9th Cir. 1995).  Given the allegations and damages claimed, this cause of action arises from a violation of, and depends on, a collective bargaining agreement and requires that a collective bargaining agreement be construed. Accordingly, Mendes's claims based on Labor Code §§ 222 and 227 for non-payment of wages are preempted by LMRA § 301.  See Lueck, 471 U.S. at 210; Balcorta, 208 F.3d at 1109 n.11; Atchley v. Heritage Cable Vision Associates, 101 F.3d 495, 499-500 (7th Cir. 1996) ("Because the CBA must be interpreted, and because the claim of the local depends on the meaning of and is substantially dependent on analysis of the CBA, the claim, even though dressed in state-law clothing, is a federal § 301 claim."); Antol v. Esposto, 100 F.3d 1111, 1117, 1119-21 (3d Cir. 1996) (holding a state statute preempted where it in essence created a claim for breach of a collective bargaining agreement); Wheeler v. Graco Trucking Corp., 985 F.2d 108, 112-13 (3d Cir. 1993) (rejecting argument that a state statute could be utilized to recover unpaid wages and holding that the "claim is based squarely on the terms of the collective bargaining agreement and therefore is governed exclusively by federal law."); Cornn, 2004 U.S. Dist. LEXIS 20578 at *3-*5.

### 3.     Third Cause of Action – Waiting Time Penalties Per Labor Code § 203

Mendes alleges that Lyles knew that it was paying him lower wages and benefits based on the improperly low utility rate and told him that it could pay the lower rate as per the OEU.  See

1   FAC at ¶ 54.  Mendes alleges that, upon termination, Lyles failed to pay him the wages and

2   increased benefits owed from March 23, 2000, through September 29, 2005, immediately upon

3   termination, and continued not to pay for over 30 days thereafter.  See id. at ¶ 55.  Mendes

4   alleges that Lyles's conduct was willful and that he is entitled to a penalty of $ 8,299.20.  See id.

5   at ¶¶ 54-55.

6          In relevant part, Labor Code § 203 provides, "If an employer willfully fails to pay,

7   without abatement or reduction, in accordance with Sections 201 . . . , any wages of an employee

8   who is discharged or who quits, the wages of the employee shall continue as a penalty from the

9   due date thereof at the same rate until paid or until an action therefor is commenced; but the

10  wages shall not continue for more than 30 days."  Cal. Lab. Code § 203.  In relevant part, Labor

11  Code § 201 reads, "If an employer discharges an employee, the wages earned and unpaid at the

12  time of discharge are due and payable immediately."  Cal. Lab. Code § 201(a).

13         The duty created by Labor Code § 201 is for the immediate payment upon discharge of

14  unpaid wages.  See Cal. Lab. Code § 201; Viceroy Gold Corp. v. Aubry, 75 F.3d 482, 489 (9th

15  Cir. 1996).  That duty exists by statute, cannot be waived, see Cal. Lab. Code § 219, and is not

16  dependent upon a collective bargaining agreement.  Similarly, the penalty under Labor Code §

17  203 is dependent upon a violation of Labor Code § 201, and exists irrespective of a collective

18  bargaining agreement.  The legal character of Labor Code §§ 201 and 203 are that of independent

19  state law claims.  See Lividas v. Bradshaw, 512 U.S. 107, 124-25 (1994); Balcorta v. 20th

20  Century Fox Film Corp., 69 F.Supp.2d 1195, 1200-01 (N.D. Cal. 1998).

21         Although independent, the Supreme Court has indicated that it may be possible for a

22  Labor Code § 203 claim to be preempted.  See Lividas, 512 U.S. at 125 n.19.  Nevertheless, at

23  this point, the Court does not see that Mendes's Labor Code § 203 claim is preempted.  The

24  specific provisions identified by Lyles deal with determining the proper amount of Mendes's

25  wages from March 2000 through September 2005.  While these provisions will impact whether

26  wages were owed, they will not impact the penalty for violating Labor Code § 203.  Importantly,

27  the Court does not see a dispute among the parties that, if wages were still owed upon his

28  termination in December 2006, the penalty would be approximately $8,300.  FAC at ¶ 55.  Cf.

Livadas, 512 U.S. at 125 (noting that the parties did not dispute the amount of the penalty).  The

Supreme Court has explained, "as a general proposition, a state law claim may depend for its

resolution upon both the interpretation of a collective-bargaining agreement and a separate state

law analysis that does not turn on the agreement.  In such a case, federal law would govern the

interpretation of the agreement, but the separate state law analysis would not be thereby

preempted."  Lingle, 486 U.S. at  413 n.12.  Whether wages were owed under the collective

bargaining agreements is a question governed by federal law; once that question is answered, the

independent § 203 claim will remain and will not be pre-empted.  See Livadas, 512 U.S. at 125;

Lingle, 486 U.S. at  413 n.12; Gulden, 890 F.2d at 199 n.5.  In other words, once it is determined

whether wages were owed to Mendes upon his termination and for 30 days thereafter, the penalty

will be $8,300.  At this time, this claim is not preempted.  See Livadas, 512 U.S. at 125; Lingle,

486 U.S. at  413 n.12 (1988); Gulden, 890 F.2d at 199 n.5; Balcorta, 69 F.Supp.2d at 1200-01.

### 4.    Failure To Exhaust Remedies Under The OEU's

Lyles's exhaustion argument is limited to claims based on alleged underpaying from

March 2000 through September 2005 — the Second and Third Causes of Action.  See Lyles's

Motion at 10:14-20 & n.2.  Lyles argues that Mendes was required to file grievances as required

by Sections 4.03.02 and 18.00.00 of the 2002 to 2006 OEU and Section 5.00.00 of the PUA.

Initially, the pre-July 2006 PUA has not been provided to the Court.  See Teixeira

Declaration at ¶ 6.  Instead, the current PUA agreement has been submitted.  See Teixeira Exhibit

E.  Mendes objects to consideration of the current PUA since it does not govern his claims from

March 2000 through September 2005.  The Court agrees.  Lyles is improperly relying on a

document that had no impact on wages or Mendes's employment prior to July 2006.  The Court

will not consider the current PUA (Teixeira Exhibit E) in resolving this motion.

It appears that the same can be said of the current OEU.  The current OEU was not in

force from March 2000 through September 2005.  In its reply, Lyles indicates that the current

OEU does not apply to Mendes's wage claim.  See Lyles' Reply at 9:10-11.  Neither side,

however, objects specifically to consideration of the current OEU.  Nevertheless, since it does

not appear that Mendes's claim depends on the current OEU (Teixeira Exhibit D), the Court will

not consider it in resolving this claim.

Thus, the only document that has been provided and that was in force during the March

2000 through September 2005 time period is the 2002-2006 OEU (Teixeira Exhibit C).  The

Court will consider this document in resolving this claim.[8]  See Parrino, 146 F.3d at 705-06.

Before bringing suit under LMRA § 301 to enforce the terms of a collective bargaining

agreement, an employee must first exhaust the grievance procedures established by the collective

bargaining agreement.  Sidhu v. Flecto, Inc., 279 F.3d 896, 898 (9th Cir. 2002); Herman, 60 F.3d

at 1380; Carr v. Pacific Maritime Ass'n, 904 F.2d 1313, 1317 (9th Cir. 1990).  "Failure to utilize

the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing

remedies in court."  Carr, 904 F.2d at 1317.  However, an employee need not exhaust grievance

procedures where the employer repudiates the specific grievance procedures provided for in the

collective bargaining agreement.  Sidhu, 279 F.3d at 899; Herman, 60 F.3d at 1380.  Exhaustion

may also be excused where the union breaches its duty of fair representation by acting arbitrarily,

discriminatorily, or in bad faith towards the employee/member, such as by ignoring a meritorious

claim or perfunctorily processing the grievance claim.  See Herman, 60 F.3d at 1380; Zuniga v.

United Can Co., 812 F.2d 443, 451 (9th Cir. 1988).  No breach of the duty of fair representation

occurs where a meritless grievance is not processed, the union engages in mere negligent

conduct, or the union makes a simple error in evaluating the merits.  See Zuniga, 812 F.2d at 451.

Lyles relies on two provisions of the 2002-2006 OEU, Sections 4.03.02 and 18.00.00.

[8]The Court gave notice to the parties that it intended to consider Exhibits C, D, and E of the Teixiera declaration in resolving this motion.  See Court's Docket Doc. No. 19.  Mendes filed objections: (1) that the Teixiera declaration was not filed concurrently with the motion to dismiss; (2) to considering the current PUA since it does not apply to the pre-2006 wage claims; (3) and to the Court's characterization of the opposition as not expressly addressing the particular provisions of bargaining agreements that were identified by Lyles.  See Court's Docket Doc. No. 20.  With respect to the first objection, the Teixiera Declaration was filed with the prior motion to dismiss and the notice of the current motion to dismiss states that it is based in part on "Declaration of Matt Teixiera (filed September 5, 2007)."  See Court's Docket Doc. No. 9.  Further, the memorandum in support of the motion to dismiss cited the Teixiera declaration.  Under these circumstances, there was no need to file the Teixiera declaration a second time.  The objection is overruled.  With respect to the current PUA, the Court is not considering that document.  With respect to the objection to the Court's characterization of his opposition, it is not an objection that goes to authenticity or reliance.  See Parrino, 146 F.3d at 705-06.  The objection is inaccurate and immaterial and, therefore, overruled.

Section 4.03.02 deals with discharges "without 'just cause'" and states that disputes over the existence of "just cause" will be determined under the grievance procedure of Section 18.00.00. See Teixeira Exhibit C. Lyles's argument is limited to the Second and Third Causes of Action, and those causes of action are for non-payment of wages; they have nothing to do with whether there was a "just cause" discharge. Section 4.03.02 is not relevant to the Second and Third Causes of Action.

Section 18.00.00 is entitled "Provisions Governing Right to Arbitrate." Id. Section 18.01.00 reads, "No dispute, complaint or grievance concerning the interpretation, application, or compliance with any provision or provisions of 04.00.00, 12.00.00, 19.00.00, and 20.00.00 is or are arbitrable under the provisions of this Section 18.00.00 of this Agreement." Id. Section 18.02.00 reads, "All other disputes, complaints and grievances are the subject of arbitration as follows." Id. Section 4.00.00 is entitled "Employment." Topics under this section include "Hiring," "Union Security," "Discharge of Employee," and "Owner Operators." Id. Section 12.00.00 is entitled "Fringe Benefits," and provides for the payments into such funds as "Health and Welfare and Sick Benefits," "Pensioned Health and Welfare," "Pension," "Annuity," etc. Id. Wage rates are found in Section 1.00.00 and Section 10.02.00 deals with and is entitled "Payment of Wages." Id.

Mendes contends that his wage claims are governed by Section 4.00.00. Lyles does not expressly dispute this. With respect to fringe benefits, for example payments into pension funds, such payments are considered "wages" for purposes of Labor Code § 203. See Cal. Labor Code § 200; Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers, Inc., 102 Cal.App.4th 765, 780-81 (2002); Ware v.Merrill Lynch, Pierce, Fenner & Smith, Inc., 24 Cal.App.3d 35, 44 (1972). Further, the 2002 to 2006 OEU provisions regarding fringe benefits are found in Section 12.00.00. That section is expressly excepted from the Section 18.00.00 grievance process. See Teixeira Exhibit C at ¶ 18.01.00. Lyles has not sufficiently shown that a claim for improper payment of fringe benefits must be grieved through Section 18.00.00. Dismissal of the unpaid fringe benefit claims on the basis of lack of exhaustion is inappropriate.

With respect to wage rates, a review of Section 4.00.00 does not include a section that

deals with wage rates or payment of wages.  Instead, it appears to the Court that the wage rate and payment provisions are found in Sections 1.00.00 and 10.02.00.  See Teixeira Exhibit C. The closest instance where wage rates are addressed in Section 4.00.00 is in sections that deals with "Owner-Operators" who elect either to go or not to go on the payroll of "employers."  See id. at §§ 4.04.12, 4.04.13.  Section 4.04.19 does state that "it is the intent of this Section to assure the payment of wages, subsistence and fringe benefit payments . . . and to prohibit the making and carrying out any plan . . . to circumvent or defeat the payment of wages, subsistence and fringe benefit payments and the observance of the conditions provided in this Master Agreement."  However, this provision is part of a subsection that deals with "Owner-Operators" and the sections immediately adjacent to this section, Sections 4.04.18 and 4.04.20 (as well as nearly every other subsection of Section 4.04.00), all specifically contain the term "Owner-Operator."  Mendes does not allege that he is an "Owner-Operator" nor does he identify the specific provision of Section 4.00.00 that would excuse not grieving the payment of an improper wage rate.  At this point, the Court does not see how his claim for payment of an improper wage rate falls under Section 4.00.00.[9]

Instead, the wage claims would appear to be governed by Section 1.00.00, and that section is not exempted from Section 18.00.00.  See Teixeira Exhibit C.  Although Mendes does allege that he contacted his union representative, in context, it appears that he only contacted his representative regarding his discharge since he only complained when he discovered that he had been replaced and that business was not slow.  See FAC at ¶¶ 61-63.  The FAC does not sufficiently allege compliance, or excuse from complying, with the arbitration/grievance provision (Section 18.00.00) of the 2002-2006 OEU as to Mendes's incorrect "wage rate" claim. Dismissal of the unpaid "wage rate" claim for lack of exhaustion of the grievance process is appropriate.

---

[9]Section 4.04.07 of the 2002-2006 OEU indicates that there are Sections 4.05.00 through 4.12.00.  See Teixeira Exhibit C.  The copy of the 2002-2006 OEU provided to the Court contains a Section 4.04.22 and then immediately, and without a break in printing, proceeds to Section 5.00.00.  See id.  The Court does not know what Sections 4.05.00 through 4.12.00 are, what they provide, or whether they deal with payment of wages or wage rates.

**5.    Leave To Amend**

The Second Cause of Action will be dismissed because Mendes's claims based on violations of Labor Code §§ 222 and 227 are preempted by LMRA § 301.  The Court sees no way that these claims may be pled as independent, state law causes of action.  However, since these statutory sections are essentially for violations/breaches of a collective bargaining agreement, Mendes's claims for unpaid wage rate and unpaid fringe benefits may be repled as violations of a collective bargaining agreement.

However, there is a problem with exhaustion of remedies with respect to the claim for unpaid wages, i.e. payment of a lower wage rate.  Mendes has not adequately identified which provisions of Section 4.00.00 apply and/or how he fits within Section 4.00.00's coverage.  At this point, it is not clear that Mendes would be unable to plead compliance or some form of excuse with respect to Section 18.00.00.  In addition to repleading his claim for "unpaid wage rate" as a violation of a collective bargaining agreement, Mendes will also need to plead excuse or compliance with the grievance procedures as to this claim.

There appears to be no exhaustion problem with respect to unpaid fringe benefits.  Accordingly, Mendes need only replead this wage claim as a breach of a collective bargaining agreement.

**CONCLUSION**

Lyles moves to dismiss the First, Second, Third, and Fifth Causes of Action as preempted by LMRA § 301.  As to the First Cause of Action, the claim is that Lyles terminated Mendes because Mendes reported a possible violation of Labor Code § 222 or insisted that § 222 be followed.  Labor Code § 222 embodies an important state public policy.  Further, no provision of an OEU or PUA need be interpreted since this cause of action is not based on an actual violation of a collective bargaining agreements or an actual violation of Labor Code § 222.  Instead, Mendes need only show that Lyles terminated him because he reported a reasonable belief of a Labor Code § 222 violation.  Determining Lyles's motivation for terminating Mendes does not require the interpretation of a collective bargaining agreement.  The First Cause of Action will not be dismissed.

As to the Second Cause of Action for violation of Labor Code §§ 222 and 227, those claims are based on what was "agreed upon" and essentially create a cause of action for a particular type of breach of a collective bargaining agreement.  Construing collective bargaining agreements would be required to resolve these claims.  These claims are preempted by LMRA § 301.  Dismissal is appropriate, but Mendes may amend his complaint to plead his claims for unpaid "wage rate" and fringe benefits as violations of a collective bargaining agreement.

As to the Third Cause of Action, the duty to pay all unpaid "wages" immediately upon termination (Labor Code § 201) and the penalty for the willful failure to do so (Labor Code § 203) are independent state law claims.  There does not appear to be a dispute regarding the amount of the penalty if wages were owed at termination.  Mendes's claim for unpaid wages will determine whether wages were owed, and that question is governed by federal law.  However, once that question is determined, Mendes's Labor Code § 203 claim may proceed without preemption.

As to the Fifth cause of action, Mendes admits that the claim is preempted.

As to the failure to exhaust grievance procedures, the claims for unpaid fringe benefits appear to be exempt from the OEU's grievance section.  The claim for unpaid "wage rate," however, appears to be governed by sections that are not exempt from the grievance procedure.  Mendes has not adequately identified which provisions of Section 4.00.00 apply and/or how he fits within Section 4.00.00's coverage, and thus, has not adequately alleged compliance with or excuse from Section 18.00.00.  Therefore, Mendes will have to allege some form of excuse or compliance with the appropriate grievance procedures with respect to his claim for unpaid hourly rate.


Accordingly, IT IS HEREBY ORDERED that:

1.    Defendant's Motion to Dismiss the First Cause of Action is DENIED;

2.    Defendant's Motion to Dismiss the Second Cause of Action is GRANTED with leave to amend;

3.    Defendant's Motion to Dismiss the Third Cause of Action is DENIED;

4.      Defendant's Motion to Dismiss the Fifth Cause of Action is GRANTED;

5.      Plaintiff may file an amended complaint within two weeks of service of this order; and

6.      If Plaintiff fails to file an amended complaint, then within three weeks of service of this order, Defendant shall file an answer to the current complaint consistent with the holdings of this order.


IT IS SO ORDERED.

**Dated:    January 17, 2008             _____/s/ Anthony W. Ishii_____**
                                                        UNITED STATES DISTRICT JUDGE